**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| **AK STEEL CORPORATION,** | : | |
| | : | |
| Plaintiff, | : | |
| | : | Case No. 1:10-cv-00255-MRB |
| v. | : | |
| | : | |
| **DONALD EARLEY, DONA ASHBY** | : | |
| **AND JONATHAN SALISBURY,** | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |
| | : | |

## DEFENDANTS' MOTION TO TRANSFER VENUE

Defendants Donald Earley, Dona Ashby and Jonathan Salisbury ("Defendants"), hereby move the Court to transfer the lawsuit to the United States District Court for the Southern District of Alabama, Southern Division, pursuant to 28 U.S.C. §1404(a). A transfer of venue to the Southern District of Alabama is warranted because venue is not proper here, the action could have been brought in the Southern District of Alabama pursuant to 28 U.S.C. §1391(a), a transfer would best serve the convenience of the parties and witnesses, and a transfer would be in the interest of justice.

This Motion is supported by the pleadings, the documents referenced therein, the affidavits of Donald Earley, Dona Ashby and Jonathan Salisbury, and Defendants' Memorandum in support of this Motion, which are being filed contemporaneously herewith.

WHEREFORE, Defendants respectfully request that the Court grant Defendants' Motion to transfer venue under 28 U.S.C. §1404(a) to the Southern District of Alabama.

Respectfully submitted,


*/s/ Thomas M.L. Metzger*

Thomas M. L. Metzger  (#0059694)
Littler Mendelson, P.C.
21 East State Street, Suite 1600
Columbus, OH  43215
Telephone:   614.463.4201
Facsimile:   614.221.3301
Email:          tmetzger@littler.com

*Attorneys for Defendants*

2

<u>MEMORANDUM IN SUPPORT</u>

Defendants Donald Earley ("Earley"), Dona Ashby ("Ashby") and Jonathan Salisbury ("Salisbury") (collectively "Defendants") submit the following Memorandum in support of their Motion to Transfer.

## I.    <u>INTRODUCTION</u>

On March 11, 2010, Plaintiff AK Steel Corporation ("AK Steel" or "Plaintiff") filed a Complaint and Request for Preliminary and Permanent Injunction in the Butler County Court of Common Pleas, Ohio, alleging claims for breach of contract, violations of Ohio's Uniform Trade Secrets Act, breach of the duty of loyalty, and breach of common-law duties of nondisclosure. (Complaint, ¶¶ 44-62).

Plaintiff seeks to maintain the lawsuit in Ohio, asserting: all or part of Plaintiff's claims for relief arose in Butler County, Ohio; Plaintiff resides in Butler County, Ohio; Defendants entered into Agreements with an Ohio-based corporation; and the Agreements are governed by Ohio law. (Complaint, ¶ 2). Defendants disagree that any of the cited grounds for venue justify retention of this suit in Ohio. Defendants seek a transfer of venue to the Southern District of Alabama, where Defendants and most – if not all – of the material non-party witnesses reside, and where the circumstances surrounding Plaintiff's allegations took place.

## II.    <u>STATEMENT OF THE FACTS</u>

### A.    <u>The Parties</u>

Plaintiff AK Steel is a corporation organized and existing under the laws of Delaware. (Complaint, ¶ 2). AK Steel's headquarters is located in Butler County, Ohio. (*Id.*) AK Steel is engaged in the integrated steel industry and operates seven production facilities in the United

States. (*Id.* ¶ 7).  One of AK Steel's manufacturing plants, known as the Rockport Works, is located at 6500 U.S. Highway 231, Rockport, Indiana. (*Id.* ¶ 2)

Defendant Earley began working for Plaintiff on August 11, 1997 at Plaintiff's Rockport Works facility in Rockport, Indiana. (Earley Afd. ¶ 1, attached as Exhibit 1). Earley did not perform any work for Plaintiff in Ohio. (Id. ¶ 2). During the entire time Earley worked for Plaintiff at Rockport Works, he resided in Santa Claus, Indiana. (Id.)

Earley gave notice of his resignation to Plaintiff in June 2009 (Id. ¶ 3). His last day worked for Plaintiff was June 26, 2009. (Id.)  At the time of his resignation from Plaintiff, he was a Senior Process Engineer for the Hot Dip Galvanizing Line. (Id.)

On July 6, 2009, Earley began working for ThyssenKrupp in the position of Team Manager for the Hot Dip Galvanizing Line 3 (Id. ¶ 4). He transferred to the position of Quality Manager for the Hot Dip Galvanizing Line in January 2010.  (Id.) All his work for ThyssenKrupp is performed at its facility in Calvert, Alabama, which is in Mobile county.  (Id.) None of his work for ThyssenKrupp occurs in Ohio. (Id.)  Earley currently resides in Daphne, Alabama, which is in Baldwin county. (Id. ¶ 5). He does not own any property in Ohio or have any reason to travel to Ohio for reasons outside this litigation. (Id.)

Defendant Ashby began working part time for Plaintiff at Plaintiff's Rockport Works facility in Rockport, Indiana in March of 2009. (Ashby Afd. ¶ 1, attached as Exhibit 2). Ashby began working full time at Rockport Works on July 1, 1999. (Id.)  During the entire time Ashby worked for Plaintiff, she was always based out of Rockport Works. (Id. ¶ 2).  Her work was almost entirely confined to Rockport Works, and travel to other facilities was very rare, and was generally only for one day. (Id.).  During the entire time Ashby worked for Plaintiff, Ashby resided in Santa Claus, Indiana. (Id.)

4

Ashby gave notice of her resignation to AK Steel on October 9, 2009. (Id. ¶ 3).  Her last day worked for AK Steel was October 23, 2009. (Id.) At the time of her resignation from AK Steel, she was a Quality/Safety Coordinator for south finishing at Rockport Works. (Id.)  In that position, she oversaw the shipping line, receiving line, and galvanizing line. (Id.)

On November 2, 2009, Ashby began working for ThyssenKrupp in the position of Technical Specialist Cold Rolled Mill line. (Id.).  All her work for ThyssenKrupp is performed at its facility in Calvert, Alabama, which is in Mobile County. (Id.)  None of her work for ThyssenKrupp occurs in Ohio. (Id.)  Ashby currently resides in Satsuma, Alabama, which is in Mobile County. (Id. ¶ 5).  She does not own any property in Ohio or have any reason to travel to Ohio for reasons outside this litigation. (Id.)

Defendant Salisbury began working for Plaintiff on October 10, 1993 at Plaintiff's facility in Middletown, Ohio. (Salisbury Afd. ¶ 1, attached as Exhibit 3).  He transferred to work at the Rockport Works facility in Rockport, Indiana in March of 1998. (Id. ¶ 1).  After transferring to Rockport Works over 12 years ago, Salisbury did not perform any further work for Plaintiff in Ohio. (Id. ¶ 2).  After his first year working at Rockport Works, he did not travel to any other facilities for his work. (Id.). Therefore, since 1999, Salisbury worked only in Rockport, Indiana until his resignation from Plaintiff. (See Id.) During the entire time Salisbury worked for Plaintiff at Rockport Works, he resided in Newburgh, Indiana. (Id.)

Salisbury gave notice of his resignation to Plaintiff on or about September 14, 2009. (Id. ¶ 3). His last day worked for Plaintiff was September 23, 2009. (Id.) At the time of his resignation from Plaintiff, he was a Senior Process Control Engineer for the galvanizing line. (Id.)

On September 28, 2009, Salisbury began working for ThyssenKrupp in the position of Lead Technical Specialist Electrical Maintenance, level 2 systems. (Id. ¶ 4). In this position, he is in charge of computer systems for several lines. (Id.) All his work for ThyssenKrupp is performed at its facility in Calvert, Alabama, which is in Mobile County. None of his work for ThyssenKrupp occurs in Ohio. (Id.) Salisbury currently resides in Satsuma, Alabama, which is in Mobile County. (Id. ¶ 5). He does not own any property in Ohio or have any reason to travel to Ohio for reasons outside this litigation. (Id.)

### B.    The Agreements

On October 10, 1993, Plaintiff presented Salisbury with an Employee Invention and Confidential Information Agreement (Complaint, ¶ 26). On August 13, 1997, Plaintiff presented Earley with an Employee Invention and Confidential Information Agreement (Complaint, ¶ 12). On July 1, 1999, Plaintiff presented Ashby with an Employee Invention and Confidential Information Agreement (Complaint, ¶ 19). The Agreements contain several restrictive covenants, one of which purports to prohibit Defendants from disclosing or using Plaintiff's confidential business information. (Complaint, ¶¶ 13, 20, and 27).

### C.    Defendants' Alleged Conduct Giving Rise To Plaintiff's Complaint

Plaintiff alleges that Defendants have violated the Agreements by disseminating and using its confidential business information, have unlawfully misappropriated Plaintiff's trade secrets, have breached their duties of loyalty to Plaintiff, and have breached their obligations under common law not to disclose Plaintiff's confidential information (Complaint ¶¶47, 51, 56, and 61). As set forth in the Complaint, *none* of the alleged events underlying Plaintiff's claims occurred in Ohio. All of the complained of conduct occurred either in Alabama, Defendants'

6

place of residence and new place of employ, or Indiana, Defendants' former place of employ.

### III.   ARGUMENT

This action should be transferred to the United States District Court for the Southern District of Alabama under 28 U.S.C. §1404(a).  As a threshold matter, Section 1404(a) states that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. §1404(a); *see Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 537 (6th Cir. 2002); *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002).  Congress enacted this provision as a "federal housekeeping measure, allowing easy change of venue within a unified federal system." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 (1981); *FTC v. Mazzoni & Son, Inc.*, No. 1:06-cv-2385, 2006 U.S. Dist. LEXIS 90333, at *4 (N.D. Ohio Dec. 13, 2006) (attached as Exhibit 4); *see also Kerobo*, 285 F.3d at 538.  Its purpose is "to prevent the waste of time, energy and money, and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964).  The decision to transfer a case is within the sound discretion of the district court judge on a "case-by-case consideration of convenience and fairness."  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Midwest Motor Supply Co., Inc. v. Kimball*, 761 F. Supp. 1316, 1318 (S.D. Ohio 1991) ("It is well established that the decision whether to transfer venue is vested in the sound discretion of the trial court").  As explained fully below, the statutory requisites for transfer to the Southern District of Alabama are met, and the facts strongly favor transfer to that district.

### A.    Plaintiff Could Have Filed This Action In The Southern District Of Alabama

"A civil action wherein jurisdiction is founded only on diversity of citizenship may . . .

be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]" *See* 28 U.S.C. § 1391(a).   Here, venue is proper in the Southern District of Alabama, Southern Division, the federal judicial district covering Mobile County, Alabama – where *all of the Defendants reside* and where a substantial part of the events giving rise to the Complaint allegedly occurred.


**B.**     **The Court Should Give Little Weight To Plaintiff's Choice Of Forum In Balancing The Factors Affecting Whether A Transfer Of Venue Is Warranted**

While a plaintiff's decision to file in a particular forum is given some weight in a venue transfer analysis, "this factor is not dispositive."   *Lewis v. ACB Bus. Servs. Inc.*, 135 F.3d 389, 413 (6th Cir. 1998).   "[T]he ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 613 (6th Cir. 1984) (quoting *Koster v. Lumbermens Mut. Cas.*, 330 U.S. 518, 527 (1947)).   Plaintiff's choice of forum is "simply one [factor] to be considered and weighed equally with other relevant criteria." *Neff Athletic Lettering Co. v. Walters*, 524 F. Supp. 268, 272 (S.D. Ohio 1981).   A plaintiff cannot evade transfer based simply because the plaintiff resides in its chosen forum. *See EGRSCO, LLC v. Evans Garment Restoration, LLC*, 2:09-CV-358, 2009 U.S. Dist. LEXIS 94507 (S.D. Ohio Oct. 8, 2009) (attached as Exhibit 5) (transferring venue to Illinois even though plaintiffs brought suit in Ohio and resided in Ohio); *Cescato v. Anthem. Inc.*, No. 1:05 CV 2004, 2005 U.S. Dist. LEXIS 34578 (N.D. Ohio Dec. 21, 2005) (attached as Exhibit 6) (transferring venue to Indiana though plaintiffs brought suit in Ohio and most of the plaintiff resided in Ohio).   Moreover, even if this Court believes that Plaintiff's choice of forum is entitled to some deference, Plaintiff's choice is ultimately outweighed by other Section 1404(a) factors.

C.    **Transferring This Action To The Southern District Of Alabama Best Will Serve The Convenience Of The Parties And Witnesses And The Interests of Justice**

The factors affecting the convenience of the parties, witnesses, and the interests of justice strongly favor transferring this case to the Southern District of Alabama. *See* 28 U.S.C. § 1404(a).  In the Sixth Circuit, the courts evaluate the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, in ruling on a motion to transfer under Section 1404(a). *Kerobo*, 285 F.3d at 537; *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).  The relevant factors discussed below clearly overcome Plaintiff's decisions to file the case in Ohio, and favor transfer of this action to the Southern District of Alabama.

1.    **The Convenience Of The Parties And Potential Witnesses And Cost Of Obtaining Willing Witnesses Balances In Favor Of Transfer**

The convenience of parties and potential witnesses, as well as the ability and cost of obtaining the testimony of witnesses, favor transfer to the Southern District of Alabama. *See Dowling,* 727 F.2d at 612; *First Bank of Marietta v. Bright Banc Savings Assn.*, 711 F. Supp. 893, 897 (S.D. Ohio 1988).  In considering the convenience of the parties, all three Defendants reside in the Southern District of Alabama.  (Earley Afd. ¶ 5 ; Ashby Afd. ¶ 5; Salisbury Afd. ¶ 5).  While Defendants are individuals who live and work in Alabama, AK Steel is a large corporation with facilities across the country (Complaint, ¶ 7).  Indeed, AK Steel is registered in Alabama to conduct business (*see* Government Records of Alabama, Secretary of State, Report on AK Steel Corporation, http://arc-sos.state.al.us/cgi/corpdetail.mbr/detail?corp=935745 &page =name&file, last accessed May 9, 2010, attached as Exhibit 7).  Were Defendants obligated to travel to Ohio frequently in order to litigate this lawsuit, it would significantly impede their

9

ability to perform their jobs. (Earley Afd. ¶ 5; Ashby Afd. ¶ 5; Salisbury Afd. ¶ 5).  Although this is seemingly what AK Steel seeks to accomplish by this lawsuit, it should not be able to impede Defendants' ability to work simply by choosing an inconvenient and improper forum – a place where none of the three Defendants lived or worked when the alleged conduct occurred.[1]

In considering the convenience other potential witnesses besides the parties, courts place great weight on this factor, and many courts have found it to be "a primary, if not the most important factor." *See Midwest Motor Supply*, 761 F. Supp. at 1319; *see also Mazzoni*, 2006 U.S. Dist. LEXIS 90333, at *7 (attached as Exhibit 4) ("The 'most important' or 'prime' factor in deciding a motion to transfer is the convenience of witnesses").  The concern is not about the convenience of employee witnesses of one of the parties (i.e. employees of AK Steel), but rather the convenience of non-party witnesses (i.e. employees of ThyssenKrupp). *See EGRSCO,* 2009 U.S. Dist. LEXIS 94507 at **18-19 (citing *Smith v. Kyphon, Inc.,* 578 F.Supp.2d 954, 962 (M.D. Tenn. 2008)) (attached as Exhibit 5).

Courts also recognize that increased travel distances and travel expenses add to the cost of attendance and inconvenience for witnesses to appear for trial and will balance in favor of transfer to reduce such costs for the convenience of parties and witnesses. *Gehm v. APL Logistics Warehouse Mgmt. Servs. Inc.*, No. 1:05cv804, 2006 U.S. Dist. LEXIS 50085, at *8 (S.D. Ohio July 21, 2006) (attached as Exhibit 8).  In *Gehm*, while granting defendant's motion to transfer venue, Judge Barrett specifically noted that:

> The travel expenses, including mileage and hotel stays, for the parties in this case, including covering those expenses for witnesses, would be greatly increased if this matter remains in the Southern District of Ohio.

---

[1] Only one of the three Defendants, Salisbury, ever worked at Plaintiff's Ohio facility, and he left that facility to work at Plaintiff's Indiana facility *over 12 years ago* and has not lived or worked in Ohio since that time. (Salisbury Afd. ¶¶ 1, 2).

*Id.* at *8.

Here, evaluating the cost of attendance shows that it would be considerably more convenient for the three Defendants and many, if not all, of the non-party witnesses, if the case were transferred to Alabama.  All three Defendants, as well as the persons who interviewed and hired the Defendants at ThyssenKrupp, and the persons with whom the Defendants now work at ThyssenKrupp, are located in the Southern District of Alabama. (Earley Afd. ¶ 4-6; Ashby Afd. ¶¶ 4-6; Salisbury Afd. ¶¶ 4-6).  The Defendants anticipate calling several persons from the Calvert, Alabama facility to testify on their behalf, and it would be very inconvenient and costly for those witnesses to travel to Ohio (Earley Afd. ¶ 6; Ashby Afd. ¶ 6; Salisbury Afd. ¶ 6); *See Jamhour*, 211 F. Supp. 2d at 947-48 (granting transfer of venue to Louisiana because all witnesses, except plaintiff, who could testify to the main issue in the case were in Louisiana).

Residing in the Calvert, Alabama area, these witnesses would be required to travel approximately 667 miles, or about 11 hours by automobile, to attend trial in Cincinnati, Ohio. (*See* http://www.mapquest.com (follow "Directions" hyperlink; "Starting Location" is Calvert, AL and "Ending Location" is Cincinnati, Ohio, last visited May 10, 2010, and attached as Exhibit 9; Earley Afd. ¶ 7; Ashby Afd. ¶ 7; Salisbury Afd. ¶ 7).  Although flight travel times between Cincinnati, Ohio and Mobile, Alabama, the location of the closest major airport to Calvert, Alabama, are approximately four hours (*see* http://www.usairways.com ("From" Mobile, AL (MOB) and "To" Cincinnati, OH (CVG), last visited June 18, 2010, and attached as Exhibit 10)), it takes approximately fifty minutes to drive from Calvert to the Mobile airport (http://www.mapquest.com (follow "Directions" hyperlink; "Starting Location" is Calvert, AL and "Ending Location" is Mobile Regional Airport, last visited May 9, 2010, and attached as Exhibit 11)), and it takes approximately 30 minutes to drive from the Cincinnati-Northern

Kentucky International Airport (located in Hebron, Kentucky) to Cincinnati (*see* http://www.mapquest.com (follow "Directions" hyperlink; "Starting Location" is Cincinnati-Northern Kentucky International Airport and "Ending Location" is Cincinnati, Ohio, last visited May 9, 2010, and attached as Exhibit 12)). (*See* Earley Afd. ¶ 7; Ashby Afd. ¶ 7; Salisbury Afd. ¶ 7). Therefore, considering the time needed to arrive at the airport, check in, and navigate security, adding this travel time to the flight time would result in a trip of at least six and a half hours. (Earley Afd. ¶ 7; Ashby Afd. ¶ 7; Salisbury Afd. ¶ 7). Furthermore, once arriving in Cincinnati, Defendants would need to pay for the meal and lodging expenses of these material witnesses because of the distance that they must travel from their residences, adding further to the inconvenience of witnesses and the parties. *See Gehm*, 2006 U.S. Dist. LEXIS 50085, at *8 (recognizing "travel expenses, including mileage and hotel stays" add to inconvenience of witnesses) (attached as Exhibit 8).

### 2.    Availability Of Compulsory Process To Secure Attendance Of Witnesses Balances In Favor Of Transfer

The availability of compulsory process to secure the attendance of witnesses is another factor to consider, which also tilts in favor of transfer. *See Dowling*, 727 F.2d at 612; *Bright Banc Savings*, 711 F. Supp. at 897; *Gehm*, 2006 U.S. Dist. LEXIS 50085, at *7 (attached as Exhibit 8). Under Federal Rule of Civil Procedure 45(c)(3), a non-party may have a court quash a subpoena for him or her to appear at trial if it requires the non-party to travel more than 100 miles to attend trial from where that person resides or regularly transacts business. *See* FED. R. CIV. P. 45(c)(3). ThyssenKrupp is not a party to this litigation. Therefore, any of its employees may move to quash a subpoena if it requires him or her to travel to Ohio – a distance over 600 miles. Several ThyssenKrupp employees likely have information in response to Plaintiff's

claims, and they reside within the Calvert area which is within reach of a subpoena from the Southern District of Alabama. (*See* Earley Afd. ¶ 6; Ashby Afd. ¶ 6; Salisbury Afd. ¶ 6). As a result, parties wishing to subpoena such ThyssenKrupp witnesses would clearly be better served prosecuting this case in Alabama rather than in Ohio. *See Gehm*, 2006 U.S. Dist. LEXIS 50085, at *7 (granting motion to transfer, in part, because the "chances of many of the witnesses being more than 100 miles away from this Court [were] fairly great") (attached as Exhibit 9).

As shown above, the relevant private factors affecting the convenience of the parties and witnesses strongly support transferring this case from the Southern District of Ohio to the Southern District of Alabama. In fact, because there is no indication that Ohio would be more or equally convenient for the parties and witnesses in Plaintiff's action than Alabama, this case should be transferred to Alabama.

### 3.     The Southern District Of Alabama Has A Significantly Smaller And Faster Moving Civil Docket

In considering the public factors impacting this case, transfer is favored in the "interest of justice" because the transferee court of the Southern District of Alabama has a significantly smaller and faster moving civil docket than the Southern District of Ohio. A comparison of the "docket congestions" between the plaintiff's choice of forum and the transferee court is a relevant factor for determining whether the "interest of justice" falls in favor of a transfer of venue, particularly when combined with other factors favoring a transfer of venue. *Neff*, 524 F. Supp. at 274 (citing *Artisan Development, Div. of Kaiser Aetna v. Mountain States Development Corp.,* 402 F. Supp. 1317 (S.D. Ohio 1975*)*; 1 MOORE'S FEDERAL PRACTICE, 0.145(5) at 1627 (1980)); *see Dowling*, 727 F.2d 608, 613; *First Bank of Marietta*, 711 F. Supp. at 897.

In this case, statistics from the Administrative Office of the United States Courts reveal

that the Southern District of Alabama had 982 pending cases at the end of September 2009, and that on average, from filing to disposition of a civil case took 7.9 months. (FEDERAL JUDICIAL CASELOAD PROFILE: SEPTEMBER 30, 2009, U.S. DISTRICT COURT SOUTHERN DISTRICT OF ALABAMA, Office of Judges Programs, Statistics Division, Office of the United States Courts (2009), *available at* http://www.uscourts.gov/cgi-bin/cmsd2009.pl) (last visited May 9, 2010, attached as Exhibit 13).  Whereas the Southern District of Ohio had 3,460 pending cases at the end of September 2009, and on average, from filing to disposition of a civil case took 10.6 months. (FEDERAL JUDICIAL CASELOAD PROFILE:  SEPTEMBER 30, 2009, U.S. DISTRICT COURT SOUTHERN DISTRICT OF OHIO, Office of Judges Programs, Statistics Division, Office of the United States Courts (2009), *available at* http://www.uscourts.gov/cgi-bin/cmsd2009.pl) (last visited May 9, 2010, attached as Exhibit 14). Thus, compared with the Southern District of Ohio, the Southern District of Alabama has a much smaller docket, which consists of less than a *third* of the number of pending cases, and the median disposition of a civil case is almost three months shorter.  Accordingly, this factor also tilts in favor of transferring this case to Alabama. *See Neff*, 524 F. Supp. at 274 (transferring to New Hampshire, because the comparative caseloads render an expeditious hearing more likely there).

> **4.     Alabama Has An Interest In Adjudicating Disputes Impacting Its Residents' Abilities To Work And Its Local Economy, And Most Of The Events Occurred In Alabama**

In considering the public factors, transfer is favored in the "interest of justice" in this case because Alabama has an interest in adjudicating disputes that impact its resident's abilities to work, and free competition in the local economy. *See Barnes Group, Inc. v. C & C Products, Inc.*, 716 F.2d 1023, 1030 (4th Cir. 1983); *see also Dowling*, 727 F.2d 608, 613 (finding one of

the public interest factors in determining transfer is the interest in deciding local controversies at home); *First Bank of Marietta*, 711 F. Supp. at 897 (same). Plaintiff is seeking to enjoin Defendants from continuing their employment with ThyssenKrupp, and seeking to enjoin them from using or disclosing Defendants' alleged confidential information and trade secrets. (Complaint, Relief ¶¶ 1-3). Because Defendants are citizens of Alabama, the enforcement of injunctive relief would ultimately be the responsibility of Alabama courts. Alabama, therefore, has a direct and ongoing interest in this litigation, which seeks to inhibit Defendants' ability to continue to work in their home state of Alabama, and which impacts free competition in the local economy. *See Barnes Group*, 716 F.2d 1023, 1030 (4th Cir. 1983) (local jurisdictions have an interest in controlling the degree of free competition in the local economy); *Cable-LA, Inc. v. Williams Comm., Inc.,* 104 F. Supp. 2d 569, 578 (M.D.N.C. 1999) ("Oklahoma has an interest in adjudicating a dispute involving an Oklahoma resident"); *United Rentals, Inc. v. Pruett*, 296 F. Supp. 2d 220, 232 (D. Conn. 2003) (California had a greater interest in construing restrictive covenants than Connecticut-based former employer because the decision would affect a California resident's ability to continue to work in California).

In addition, Alabama is the location where most of the events leading to Plaintiff's allegations, including the alleged breach of the Agreements, took place. By contrast, this action bears no connection to the Southern District of Ohio. Defendants did not live or work in Ohio when the alleged conduct occurred. Courts have consistently held that litigation "should take place in the federal judicial district or division with the closest relationship to the operative events." *See, e.g., Speed Trac Techs., Inc. v. Estes Express Lines, Inc.,* 567 F. Supp. 2d 799, 804 (M.D.N.C. 2008); *see also Open Solutions Imaging Sys., Inc. v. Horn*, 04-C-123-C, 2004 U.S. Dist. LEXIS 14198, at *19 (D. Conn. Mar. 5, 2004) (case involving an alleged breach of a non-

compete agreement transferred to the district where the alleged breach occurred) (attached as Exhibit 15); *Insight Data Corp. v. First Bank Systems, Inc.,* 97 Civ. 4896, 1998 U.S. Dist. LEXIS 3604, at **8-9 (S.D.N.Y. Mar. 25, 1998) (same) (attached as Exhibit 16).   A transfer of this action to Alabama is therefore warranted.

        None of the remaining factors, including the irrelevant fact that the Agreements include choice of law provisions, weigh in favor of Ohio as the more appropriate forum for this litigation.   In determining which law applies to contracts, Alabama courts first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. *Clanton v. Inter.net Global, LLC,* 435 F.3d 1319, 1323 (11th Cir. 2006); *Stovall v. Universal Const. Co., Inc.*, 893 So.2d 1090, 1102 (Ala. 2004).   There is no reason, therefore, that the Southern District of Alabama would not apply the same law as the Southern District of Ohio, based on the choice of law provisions in the Agreements.

        As shown above, the relevant public factors affecting the interest of justice strongly support transferring this case from the Southern District of Ohio to the Southern District of Alabama. And, because there is no indication that retention of this case in Ohio would better serve the interest of justice, this case should be transferred to Alabama.


**IV.    CONCLUSION**

        Because transfer would best serve the convenience of the parties and witnesses and the interest of justice, Defendants respectfully requests that this Court enter an Order transferring this action to the United States District Court for the Southern District of Alabama, Southern Division.

Respectfully submitted,


_/s/ Thomas M.L. Metzger_

Thomas M. L. Metzger  (#0059694)
Littler Mendelson, P.C.
21 East State Street, Suite 1600
Columbus, OH  43215
Telephone:   614.463.4201
Facsimile:   614.221.3301
Email:        tmetzger@littler.com

_Attorneys for Defendants_

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June, 2010, a copy of the foregoing was filed via the electronic filing system and was served upon:

>Justin D. Flamm, Esq.
>Ryan M. Martin, Esq.
>Taft Stettinius & Hollister LLP
>425 Walnut Street, Suite 1800
>Cincinnati, Ohio 45202
>*Attorneys for Plaintiff*

>*/s/ Thomas M.L. Metzger*
>An Attorney for Defendants