# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ALABAMA

**AK STEEL CORPORATION,**                :
                                        :
    Plaintiff,                        :
                                        :    Case No. 1:10cv415
    v.                                :
                                        :    Judge Kristi K. DuBose
**DONALD EARLEY, DONA**                  :
**ASHBY AND JONATHAN**                   :    Magistrate Judge William E.
**SALISBURY,**                           :    Cassady
                                        :
    Defendants.                       :
                                        :
                                        :
                                        :

## PROPOSED DETERMINATIONS OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

June 1, 2011          Thomas M.L. Metzger  (admitted Pro Hac Vice)
                Natalie M. McLaughlin (admitted Pro Hac Vice)
                Littler Mendelson, P.C.
                21 East State Street, Suite 1600
                Columbus, OH  43215
                Telephone: 614.463.4201
                Facsimile:  614.221.3301
                Email:     tmetzger@littler.com;
                           nmclaughlin@littler.com

                *Attorneys for Defendants*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................iii

I.      INTRODUCTION ........................................................................................ 1

II.     PROPOSED DETERMINATIONS OF UNDISPUTED FACTS ................ 2

        A.      Parties And Other Employees Of Plaintiff ....................................... 2

        B.      Defendants' Agreements .................................................................... 4

        C.      Defendants' Resignations .................................................................. 5

        D.      Defendants' Employment with ThyssenKrupp
                And Differences In New Positions ..................................................... 7

        E.      Earley's Emails From Work To Home ............................................. 10

        F.      Emails Between Earley And Salisbury ............................................ 10

        G.      Emails Between Earley And Ashby .................................................. 11

        H.      No Evidence Of Wrongdoing Or Damages ...................................... 13

III.    PROCEDURAL HISTORY ....................................................................... 15

IV.     CONCLUSIONS OF LAW ........................................................................ 15

        A.      Standard for Summary Judgment .................................................... 15

        B.      Plaintiff Cannot Establish That Defendants Breached
                Their Agreements ............................................................................ 16

        C.      Plaintiff Cannot Establish That Defendants Misappropriated
                Trade Secrets In Violation Of The Ohio Uniform Trade
                Secrets Act ....................................................................................... 21

        D.      Plaintiff Cannot Establish That Defendants Breached Any
                Duties Of Loyalty ............................................................................ 26

# TABLE OF CONTENTS
## (CONTINUED)

PAGE

E.    Plaintiff Cannot Establish That Defendants Breached Any Common Law Duties Of Non Disclosure ................................ 28

V.    CONCLUSION ............................................................................ 29

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) ....................................... 16

Celotex v. Catrett, 477 U.S. 317 (1986) ............................................................ 15

Earley v. Champion Corp., 907 F.2d 1077, 1080 (11th Cir. 1990) ..................... 15

Fitness Experience, Inc. v. TFC Fitness Equip., Inc., 355 F. Supp. 2d 877
(N.D. Ohio 2004) ............................................................................................ 27

Glasstech, Inc. v. TGL Tempering Sys., Inc., 50 F. Supp. 2d 722, 730
(N.D. Ohio 1999) ............................................................................................ 28

Grigsby v. Reynold's Metals Co., 821 F.2d 590 (11th Cir. 1987) ....................... 16

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ........... 16

Mihelich v. Active Plumbing Supply Co., 2009 Ohio 2248, ¶21
(Ohio Ct. App. 2009) ...................................................................................... 20

Murray v. Bank One, 99 Ohio App. 3d 89 (Ohio Ct. App. 1994) ....................... 22

R&R Plastics v. F.E. Myers Co., 92 Ohio App. 3d 789 (Ohio Ct. App. 1993) ..... 22

S&G Invests., L.L.C. v. United Cos., L.L.C., 2010 Ohio 3691, ¶12
(Ohio Ct. App. 2010) ...................................................................................... 16

State ex rel. The Plain Dealer v. Ohio Dept. of Ins., 80 Ohio Det. 3d
513 (1997) ................................................................................................. 21, 23

Valley Paint & Body v. Ins. Co. of the State of Pa., 2011 Ohio 1307,
¶1 (Ohio Ct. App.  2011) ................................................................................ 20

Water Mgmt., Inc. v. Stayanchi, 15 Ohio Det. 3d 83 (1984) .............................. 23

Young v. General Foods Corp., 840 F.2d 825 (11th Cir. 1988) ........................... 15

**STATUTES**

Ohio Rev. Code § 1333.61(D) .......................................................................... 21

Ohio Rev. Code §1333.61(A) ..................................................................... 25, 26

Ohio Rev. Code §1333.67 ................................................................................ 28

**RULES**

Fed. R. Civ. P. 56(c)(2) .................................................................................... 15

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | | |
|---|---|---|
| **AK STEEL CORPORATION,** | : | |
| | : | |
| Plaintiff, | : | Case No. 1:10cv415 |
| | : | |
| v. | : | Judge Kristi K. DuBose |
| | : | |
| **DONALD EARLEY, DONA** | : | Magistrate Judge William E. |
| **ASHBY AND JONATHAN** | : | Cassady |
| **SALISBURY,** | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

## PROPOSED DETERMINATIONS OF UNDISPUTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This *Proposed Determinations of Undisputed Facts and Conclusions of Law in Support of Defendants' Motion for Summary Judgment* establishes that there is no genuine issue of material fact and that Defendants Donald Earley ("Earley"), Dona Ashby ("Ashby"), and Jonathan Salisbury ("Salisbury") (collectively "Defendants") are entitled to a judgment as a matter of law on all claims that Plaintiff AK Steel Corporation ("Plaintiff") asserts in this lawsuit.

## I.   INTRODUCTION

On March 11, 2010, Plaintiff instituted this lawsuit against Defendants, who are all former employees of AK Steel.  AK Steel alleges claims for breach of contract, misappropriation of trade secrets in violation of the Ohio Uniform Trade

Secrets Act, breach of duty of loyalty, and breach of common law duties of nondisclosure. As demonstrated below, Plaintiff's claims cannot withstand scrutiny under the applicable summary judgment standard, and therefore the claims must be dismissed as a matter of law.

## II.   PROPOSED DETERMINATIONS OF UNDISPUTED FACTS

### A.   Parties And Other Employees Of Plaintiff

1.     Plaintiff is a Delaware corporation, with it headquarters in Butler County, Ohio. (Complaint ¶2). Plaintiff operates seven steel production facilities in the United States (*Id.* at ¶7). One of Plaintiff's steel manufacturing plants is located in Rockport, Indiana, and is known as  Rockport Works (*Id.* at ¶2).  Plaintiff employs approximately 280 employees at Rockport Works; and there are approximately 500 others who are not employees of Plaintiff, and who mostly provide maintenance services (Ludwig Dep. pp. 70-71).[1]

2.     Earley is a former employee of Plaintiff who began working for Plaintiff at Rockport Works in August 1997 (Mot. to Transfer Ex. 1, ¶1; Complaint ¶10). Earley resigned his employment with Plaintiff in June 2009 (Mot. to Transfer

---

[1]     References to the transcripts of the depositions of Matthew Ludwig, Edward Kralj, Joe Frantonius, Steven Boston, Tracy Jahn, Tom Thompson, Donald Earley, Dona Ashby, and Jonathan Salisbury and to the exhibits appended to them, are abbreviated as "Ludwig Dep. p." and "Ludwig Dep. Ex.", "Kralj Dep. p." and "Kralj Dep. Ex.", "Frantonius Dep. p." and "Frantonius Dep. Ex.", "Boston Dep. p." and "Boston Dep. Ex.", "Jahn Dep. p." and "Jahn Dep. Ex.", "Thompson Dep. p." and "Thompson Dep. Ex.", "Earley Dep. p." and "Earley Dep. Ex.", Ashby Dep. p." and "Ashby Dep. Ex.", and "Salisbury Dep. p." and "Salisbury Dep. Ex." The cited portions of these deposition transcripts and exhibits are attached to this document as follows: Ludwig's deposition (Exhibit A), Kralj's deposition (Exhibit B), Frantonius's deposition (Exhibit C), Boston's deposition (Exhibit D), Jahn's deposition (Exhibit E), Thompson's deposition (Exhibit F), Earley's deposition (Exhibit G), Ashby's deposition (Exhibit H), and Salisbury's deposition (Exhibit I).

Ex. 1, ¶3). Earley has worked in the steel industry for over 48 years (Earley Dep. p. 14). Earley is now employed with ThyssenKrupp Steel USA, LLC ("ThyssenKrupp") in Calvert, Alabama (*Id.* at ¶4).

3.     Ashby is a former employee of Plaintiff who began working full time for Plaintiff at Rockport Works in July 1999 (Mot. to Transfer, Ex. 2, ¶1; see Complaint ¶17). Ashby resigned her employment with Plaintiff in October 2009 (Mot. to Transfer, Ex. 2, ¶3). Ashby is now employed with ThyssenKrupp in Calvert, Alabama (*Id.* at ¶4).

4.     Salisbury is a former employee of Plaintiff who began working for Plaintiff in October 1993 (Mot. to Transfer, Ex. 3, ¶1; Complaint ¶24). Salisbury transferred to work at Rockport Works in March 1998 (Mot. to Transfer, Ex. 3, ¶1). Salisbury resigned his employment with Plaintiff in September 2009 (*Id.* at ¶3). Salisbury is now employed with ThyssenKrupp in Calvert, Alabama (*Id.* at ¶4).

5.     Steve Boston ("Boston") is the Technical Manager of Finishing at Rockport Works (Boston Dep. p. 8). Boston directly supervised Earley and Ashby (*Id.* at p. 10). Edward Kralj ("Kralj") is the Manager of Operations of Finishing, Galvanized Line, and Shipping at Rockport Works (Kralj Dep. p. 5). Kralj directly supervised Salisbury (*Id.* at p. 9). Joe Frantonius ("Frantonius") is the Department Manager of Finishing at Rockport Works and Kralj and Boston report to him

- 3 -

(Boston Dep. p. 8; Kralj Dep. p. 9; Frantonius Dep. p. 11). Matt Ludwig ("Ludwig") is the General Manager at Rockport Works, and he oversees the entire plant operations and has the highest level of authority at the plant (Ludwig Dep. p. 6, 19-20). Tracy Jahn ("Jahn") is the Manager of Human Resources at Rockport Works (Jahn Dep. p. 6). Tom Thompson ("Thompson") is the General Manager of Information Technology for Plaintiff (Thompson Dep. p. 6).

### B.  **Defendants' Agreements**

6.    Defendants entered into Employee Invention and Confidential Information Agreements (the "Agreements") with Plaintiff near the start of their employment with AK Steel (Complaint ¶¶12, 19, and 26). These Agreements call for the application of Ohio law (*Id.*). These Agreements provide:

> I will not ***disclose or use*** directly or indirectly, any information I obtain during the course of my employment relating to inventions, products, product specifications, processes, procedures, machinery, apparatus, prices, discounts, manufacturing cost, business affairs, future plans, customers, ideas, technical data or otherwise which is ***of a secret or confidential nature*** (whether or not acquired or developed by me) and which belongs to the Company or to those with whom the company has contracted regarding such information.

(Complaint Exs. A, B, and C) (emphasis added).

7.    Boston, who was Earley and Ashby's direct supervisor at AK Steel, was not familiar with an Employee Invention and Confidential Information Agreement, and was not sure if he had ever signed such an Agreement, but noted if he had, it would have been back in 1980 (Boston Dep. p. 41). Though he is the

Plant Manager, Ludwig did not know if any of the other individuals that work at Rockport Works signed similar confidentiality agreements with Plaintiff, although they have access to the same areas of Rockport Works as did the Defendants (*Id.* at pp. 72-73).

8.      Defendants do not have any non-competition obligations under these Agreements or any other agreement with Plaintiff, and they were free at any time to leave their employment with Plaintiff and to work for a direct competitor (See Complaint Exs. A, B, and C; Boston Dep. p. 76; Frantonius Dep. p. 34; Ludwig Dep. p. 51; Jahn Dep. p. 29).   Defendants are thereby not in breach of their Agreements or any other obligation due to their employment with ThyssenKrupp (See *Id.*).

### C.    <u>Defendants' Resignations</u>

9.      Earley's last day of work for Plaintiff was June 26, 2009 (Mot. to Transfer, Ex. 1, ¶3). At the time he resigned, he was a Senior Process Engineer for the hot dip galvanizing line (*Id.*).  Boston, Earley's direct supervisor, testified that he had no issue with Earley going to work for ThyssenKrupp (Boston Dep. pp. 75-76). In addition, Ludwig, the General Manager at Rockport Works, testified that he did not have any issue with Earley going to work for ThyssenKrupp, because he would not expect an employee transferring between ThyssenKrupp and Plaintiff to

bring any information from the other company because "*I would imagine that they do business differently than we do*." (Ludwig Dep. p. 102) (emphasis added).

10.    Earley had an exit interview with Jahn, during which he told her that he was going to work for ThyssenKrupp (Earley Dep. p. 72; Jahn Dep. p. 29). Jahn does not recall discussing with Earley any obligations to not disclose information he learned during his employment with Plaintiff to ThyssenKrupp and she did not request that he return any documents in his possession (See Jahn Dep. p. 20-21, 62-63).

11.    Ashby resigned her employment with Plaintiff on October 9, 2009, and her last day worked was October 23, 2009 (Mot. to Transfer, Ex. 2, ¶3). At the time she resigned, she was a Quality/Safety Coordinator for south finishing (*Id.*). Boston, Ashby's direct supervisor, testified that he had no issue with Ashby going to work for ThyssenKrupp (Boston Dep. pp. 73-74).

12.    Ashby had an exit interview with Jahn that lasted approximately 10 minutes during which she told Jahn that she was taking a position with ThyssenKrupp (Ashby Dep. pp. 12-13, 15; Jahn Dep. p. 24). Jahn did not discuss with Ashby any obligations to not disclose information she learned during her employment with Plaintiff to ThyssenKrupp, and did not request that she return any documents in her possession (Ashby Dep. p. 69; see Jahn Dep. pp. 19-20, 61-62).

13.     Salisbury resigned his employment with Plaintiff on September 14, 2009, and his last day worked was September 23, 2009 (Mot. to Transfer, Ex. 3, ¶3). At the time he resigned, he was a Senior Process Control Engineer for the galvanizing line (*Id.*). No one from Plaintiff met with Salisbury or conducted an exit interview with him before he left (Salisbury Dep. p. 40; Jahn Dep. p. 21).

14.     Jahn does not recall showing any of the Defendants their Agreements when they were leaving Plaintiff's employment or even discussing their Agreements with them (Jahn Dep. p. 58). Jahn does not recall discussing any obligations Defendants may have had to not disclose confidential information, or requesting that they return any documents in their possession to Plaintiff upon their departure (See *Id.*)

15.     Thompson, the General Manager of Information Technology ("IT") for Plaintiff, testified that in anticipation of and in the course of this litigation, the IT department was not requested to search for any documents other than emails and attachments relating to Defendants; the IT department did not perform any analysis on any of Defendants' computers; and the IT Department was never asked to conduct an analysis of anything hardware related on any of Defendants' computers (Thompson Dep. pp. 68-70).

### D.    <u>Defendants' Employment with ThyssenKrupp And Differences In New Positions</u>

16.     Earley began working for ThyssenKrupp on July 6, 2009 as a Team

Manager for the Hot Dip Galvanizing Line 3 (Mot. to Transfer Ex. 1, ¶4). In January 2010, he was transferred to the position of Quality Manager for the Hot Dip Galvanizing Line (*Id.*). In this position, the duties he performs are different than those he performed for Plaintiff (Earley Dep. p. 159). For example, when Earley worked for Plaintiff, he worked primarily on data mining concerns for quality in connection with customer complaints or after manufacturing problems arose with a particular process or product at AK Steel's Rockport Works facility; whereas, with ThyssenKrupp, Earley now deals with the quality of the product as it is being made in ThyssenKrupp's operation (*Id.* at p. 79, 162).[2] Essentially, Earley is now managing a group of people that will assess the quality of ThyssenKrupp's product before it goes to the customer (*Id.* at p. 160). He is also involved in assisting with the building of a laboratory, whereas he was never involved in laboratory testing when he worked for Plaintiff (Earley Dep. p. 163).

17.   Ashby began working for ThyssenKrupp on November 2, 2009 as a Technical Specialist for the Cold Rolled Mill (Mot. to Transfer Ex. 2, ¶4). In this position, she has entirely different duties and works on a different line – the cold mill and pickle line – which she had no prior experience working on with Plaintiff (Ashby Dep. p. 113-14). When Ashby worked for Plaintiff, she oversaw the quality and safety documents for the shipping, receiving, and galvanizing lines (*Id.*).

---

[2]      Data mining is reviewing trend graphs of data generated by the company to determine what went wrong with the process (*Id.* at p. 18). It is not a means to develop quality standards, but rather, to figure out what went wrong if you had a product go into the field that failed (*Id.* at pp. 18-19).

Boston testified that in Ashby's position with Plaintiff, there were no changes, modifications, or improvements that Ashby contributed to or was responsible for on those lines (Boston Dep. p. 76). Ashby did not prepare or approve any instructions or technical aspects of documents (*Id.* at pp. 68-69). Ashby's primary responsibility was simply to maintain Plaintiff's documents in an orderly fashion and to keep them up to date in the document control system.   As Boston testified,"[h]er responsibility was to make sure it's on the right form, in the right place, signed off by the right people"  (*Id.* at pp. 64, 66).

18.   Salisbury began working for ThyssenKrupp on September 28, 2009 as a Lead Technical Specialist for Electrical Maintenance, Level 2 Systems  (Mot. to Transfer Ex. 3, ¶4).  In this position, he is in charge of the computer system for several lines (*Id.*). Salisbury testified that while with AK Steel, he "did a  lot of hardware things, like changing monitors and changing mice and a lot of level one HMI screen changes, and I am doing none of that in my new position." (Salisbury Dep. P. 42).  Salisbury went on to explain that his new position is different because there is "different hardware and different software, with the exception that both places are using Oracle as a database. But AK is using an Oracle version that is not compatible with the version that TK is using. They're using 7.3 and we're using 11G. So the hardware is different. The software is different, except for the Oracle. And the job duties are different."  (Salisbury Dep. p. 42).

### E.   Earley's Emails From Work To Home

19.   Plaintiff contends in the Complaint that in mid-June 2009, while Earley *was still employed with Plaintiff*, he accessed Plaintiff's computer systems and sent dozens of e-mails and other files to a personal e-mail address (Complaint ¶31). Earley explains that he sent these emails to himself to put together a report for Ludwig regarding quality issues on the galvanizing line, and to point out to Ludwig issues that had not been disclosed and matters that had been misrepresented by Earley's superiors (Boston, Frantonius, and Kralj) (Earley Dep. p. 83-84). Ludwig and Earley met for an exit interview and discussed the issues Earley had raised in the report (*Id.* at p. 86).  There is absolutely no evidence that Earley retained any of the information in those documents after his employment with Plaintiff ended; absolutely no evidence that Earley has used the information to benefit himself or ThyssenKrupp; absolutely no evidence that the information in those documents would even be of any benefit to himself or ThyssenKrupp; and absolutely no evidence that Earley has shared the information in those documents with anyone who is not a current employee for Plaintiff.

### F.   Emails Between Earley And Salisbury

20.   Plaintiff complains about a July 8, 2009 e-mail that Salisbury sent Earley stating, "I over promised what I said I'd get done today. There's a lot more to cram in there than I thought. I'll get it done overnight and send it out first thing

in the morning." (See Complaint ¶37). Plaintiff's hollow assertion that this email exchange relates to confidential information is utterly unwarranted. What was actually sent from Salisbury to Earley was an email with three Word files: Salisbury's *resume*, Salisbury's *cover letter* to accompany that resume, and Salisbury's letter to Earley regarding difficulties he was having in *writing the cover letter* (See Salisbury Dep. Ex. 1). There is nothing remotely confidential about this exchange of information, and there is no evidence that Salisbury ever sent Earley any confidential information.

21.     The only other item that Salisbury ever provided to Earley was a conversion utility, which is a piece of software that simply converts an English measuring unit to metric (i.e. converts feet to meters) (Salisbury Dep. p. 26). This was actually something that Salisbury had simply downloaded off the internet (*Id.*). There is nothing confidential about this basic, and publicly available information.

### G.     Emails Between Earley And Ashby

22.     Plaintiff complains about an email exchange on September 14 and 15, 2009 between Earley and Ashby in which they discussed the possibility of Ashby obtaining a position with ThyssenKrupp (See Complaint ¶39). Ashby submitted her resume to Earley to review (Ashby Dep. Ex. 9). As discussed above, there is nothing that prevented them from discussing the possibility of Ashby obtaining a position with ThyssenKrupp, that prevented Earley from soliciting Ashby, that

prevented Ashby from providing her resume to Earley, or that prevented Ashby from going to work for ThyssenKrupp (See Complaint Exs. A, B, and C; Boston Dep. p. 76; Frantonius Dep. p. 34; Ludwig Dep. p. 51; Jahn Dep. p. 29).

23.    Plaintiff also complains about an email exchange on September 21, 2009 between Earley and Ashby in which Ashby transmitted two things to Earley (See Complaint ¶40).    First, she transmitted a Gage Repeatability and Reproducibility History ("GR&R") summary to Earley (Ashby Dep. p. 38-39, Ex. 1). Second, she transmitted an Inspection, Measuring, and Test ("IMT") Equipment list (Ashby Dep. Ex. 3).  Ashby's intent in providing these documents was to recommend to Earley a central location for instruments (Ashby pp. 45-46). Ashby had no concerns about sending these documents to Earley as they are not confidential to Plaintiff (*Id.* at p. 47). They are also not marked as confidential (Ashby Dep. Exs. 1 and 3).

24.    Furthermore, information provided in these documents is information provided to auditors for auditing purposes (Ashby Dep. p. 58; Earley Dep. pp. 125-26; Boston Dep. p. 94). Boston, the direct supervisor for Earley and Ashby, testified that this information is freely shared with SRI, an outside company that performs audits for Plaintiff twice a year (Boston Dep. pp. 82-83, 100, 108). Plaintiff has also provided the IMT to American Iron and Steel Institute, a trade organization, at least three times during the 13 years that Earley updated it (Earley

Dep. pp. 112-13).

25.     Finally, for each piece of equipment tested in a GR&R and IMT, the equipment is all purchased by Plaintiff from another manufacturer and can be purchased by any competitor (Boston Dep. pp. 103-04). The information provided in the GR&R and IMT is information for devices manufactured outside of AK Steel, and is not information unique to Plaintiff (*Id.* at p. 105). Therefore, there is nothing confidential about this information.

### H.     No Evidence Of Wrongdoing Or Damages

26.     Boston, Kralj, Frantonius, Ludwig, and Jahn were all asked whether they were aware of *any wrongdoing* committed by Defendants or *any damages* caused by Defendants – and  none were able to identify any wrongdoing or damages. Notably:

- They were all asked if they were aware if any of the Defendants revealed, used, or disclosed any information without authorization that Plaintiff considered to be confidential or a trade secret, either during or after their employment with Plaintiff, or if they were aware if Defendants otherwise breached their Agreements or any confidentiality obligations.  All denied knowledge of any such wrongdoing (See Boston Dep. p. 76, 142, 143; Frantonius Dep. p. 29-31; Kralj Dep. p. 16; Ludwig Dep. p. 77-78, 118-19; Jahn Dep. p. 52, 76).

- Frantonius and Ludwig were asked if they were aware of any customers who were solicited by Defendants or were aware of any business or customers lost or relationships with vendors that were negatively affected due to the actions of Defendants. They denied knowledge of any such actions or harm (See Frantonius Dep. p. 31-33; Ludwig Dep. p. 34-35, 68).

- Boston, Ludwig, Frantonius, and Jahn were asked if they were aware if any of the Defendants took any actions that were detrimental to Plaintiff's financial or business interests. They all denied knowledge of any detrimental actions taken by Defendants (See Boston Dep. p. 143; Frantonius Dep. pp. 36-37; Ludwig Dep. p. 120; Jahn Dep. p. 77).

- They were all asked if they were aware of any harm, including monetary harm, caused by any actions of Defendants. They all denied knowledge of any harm caused by Defendants (See Boston Dep. p. 76; Frantonius Dep. p. 33; Kralj Dep. pp. 17-18; Ludwig Dep. pp. 67,120; Jahn Dep. p. 52).

27.     They also confirmed that Defendants are not subject to any non-compete obligations and are free to work for any competitor, are free to solicit Plaintiffs' customers for their new employer, and are free to solicit Plaintiffs' employees for their new employer (Boston Dep. pp. 76; Frantonius Dep. p. 34; Ludwig Dep. p. 51, 64; Jahn Dep. p. 29, 41-42)

28.     Boston, Earley's prior supervisor, originally recommended Earley to be hired by Plaintiff in 1997 because he had appropriate experience in the industry (Boston Dep. p. 149). The appropriate experience being that "[h]e worked at the galvanizing line in Bethlehem Steel . . . [h]e would have the knowledge to get things done." (*Id.* at p. 149). Boston believed that even though Bethlehem Steel was a competitor, it was fair to hire Earley based on that experience, and in fact, Earley's experience was the only reason he was hired (*Id.* at p. 150). Earley was thus hired by Plaintiff to work on the exact same line that he had worked on at Bethlehem Steel (*Id.* at pp. 150-51; Earley Dep. p. 15).

- 14 -

## III.   PROCEDURAL HISTORY

29.     On March 11, 2010, Plaintiff filed this action against Defendants in the Ohio Court of Common Pleas of Butler County, Ohio. On April 21, 2010, Defendants removed this case to the United States District Court for the Southern District of Ohio, which encompasses Butler County, on the basis of diversity jurisdiction. On August 3, 2010, this case was transferred to United States District Court for the Southern District of Alabama.

## IV.   CONCLUSIONS OF LAW

### A.   Standard for Summary Judgment

1.     Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). If, after adequate time for discovery, a party who is confronted with a properly supported motion for summary judgment "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial," the plain language of Rule 56 mandates entry of summary judgment. Celotex v. Catrett, 477 U.S. 317, 322 (1986).; Earley v. Champion Corp., 907 F.2d 1077, 1080  (11th Cir. 1990); Young v. General Foods Corp., 840 F.2d 825, 828  (11th Cir. 1988).  It is the non-moving party's obligation to come forward with some specific facts, not mere allegations, which show there is a genuine issue of material fact for trial.

Summary judgment is proper if the non-moving party fails to make this requisite showing. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986); Grigsby v. Reynold's Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

### B.   Plaintiff Cannot Establish That Defendants Breached Their Agreements.

2.      The Agreements are governed by Ohio law.  Under Ohio law, in order to establish a breach of contract claim, Plaintiff must prove: (1) that a contract exists; (2) that Plaintiff fulfilled its contractual obligations, (3) that Defendants failed to fulfill their contractual obligations, and (4) that Plaintiff incurred damages as a result. S&G Invests., L.L.C. v. United Cos., L.L.C., 2010 Ohio 3691, ¶12 (Ohio Ct. App. 2010). Assuming, *arguendo*, for purposes of this Motion that a contract exists and Plaintiff fulfilled its contractual obligations, summary judgment should be granted on Plaintiff's breach of contract claim because Plaintiff cannot prove that Defendants failed to fulfill their contractual obligations or that Plaintiff incurred damages as a result.

3.      First, Plaintiff cannot prove that Defendants failed to fulfill their contractual obligations.  Pursuant to the Agreements, Defendants only agreed to not disclose or use directly or directly any information which is confidential that

belongs to Plaintiff (Det. of Facts ¶6).[3] Defendants do not have any non-compete obligations under these Agreements, and they were free at any time to leave their employ with Plaintiff and to work for a direct competitor (*Id.*) Defendants are thereby not in breach of their Agreements or any other obligation due to their employment with ThyssenKrupp (*Id.*)

4.    Moreover, Plaintiff cannot show that Defendants either disclosed or used any information that is confidential to Plaintiff. Testimony by Boston (Earley and Ashby's direct supervisor), Kralj (Salisbury's direct supervisor), Frantonius (the Department Manager for the department where all three Defendants worked), Ludwig (the General Manager for Rockport Works plant), and Jahn (the Human Resources manager for Rockport Works) is very clear on this essential element – none of them are aware of Defendants revealing, using, or disclosing any information without authorization that Plaintiff considered to be confidential, and none of them are aware of Defendants breaching any confidentiality obligations under their Agreements (*Id.* at ¶26).

5.    The ***only information*** that Salisbury shared with anyone outside of the company is his resume, a cover letter, and a conversion utility which he downloaded off the Internet, which simply converts English measuring units to metric (Det. of Facts ¶20-21). There is no evidence that this information shared

---

[3]    References to the Proposed Determination of Undisputed Facts are abbreviated as "Det. of Facts ¶".

was confidential to Plaintiff.  In sum, there is no evidence that Salisbury either used or disclosed, or that he would even have any reason to use or disclose, any confidential information belonging to Plaintiff.

6.     The *only information* that Ashby ever shared with anyone outside of the company is a copy of her resume, a GR&R summary, and an IMT list (Det. of Facts ¶¶22-23).   Neither the GR&R summary or the IMT list have ever been designated by Plaintiff as confidential, they are freely shared with outside auditors, and have even been shared on several occasions with an outside trade organization (*Id.* at ¶¶23-24).   Furthermore, the equipment tested in a GR&R and IMT is all purchased by Plaintiff from another manufacturer and can be purchased by any competitor.  The information provided in the GR&R and IMT is information based on the device that is manufactured by someone else and is not information that is unique to Plaintiff (*Id.* at ¶25). There is no evidence that this information was confidential to Plaintiff, as this information is not designated as confidential, is information based on equipment of other companies, and is freely shared with outside auditors and trade organizations.  In sum, there is no evidence that Ashby either used or disclosed, or that she would even have any reason to use or disclose, any confidential information belonging to Plaintiff.

7.     There is *no evidence* that Earley ever shared a single document or any information with anyone outside the company. The only evidence presented by

Plaintiff against Earley is that Earley was provided with the above information by Salisbury and Ashby, which is not confidential, and that Earley sent emails to his home email address while still employed with Plaintiff (*Id.* at ¶¶19-25). The emails sent to Earley's home address while he was still an employee were for the purpose of putting together a report for Ludwig regarding quality issues on the galvanizing line and to point out to Ludwig things that had not been disclosed and things that had been misrepresented by Earley's superiors (*Id.* at ¶19). Though Plaintiff may attempt to argue that Earley had some ulterior motive, there is absolutely no evidence that Earley retained any of the information in those documents after his employment with Plaintiff, absolutely no evidence that Earley has used the information in those documents to benefit himself or ThyssenKrupp, absolutely no evidence that the information in those documents would even be of any benefit to himself or ThyssenKrupp, and absolutely no evidence that Earley has shared the information in those documents with anyone who is not a current employee of Plaintiff (*Id.*). In sum, there is no evidence that Earley either used or disclosed, or that he would even have any reason to use or disclose, any confidential information belonging to Plaintiff.

8.     Plaintiff cannot prove that it incurred any damages as a result of Defendants' alleged breach of their Agreements. Summary judgment is appropriate when a plaintiff fails to show any damages resulting from the alleged breach. *See*

<u>Valley Paint & Body v. Ins. Co. of the State of Pa.</u>, 2011 Ohio 1307, ¶1 (Ohio Ct. App.  2011); *see also* <u>Mihelich v. Active Plumbing Supply Co.</u>, 2009 Ohio 2248, ¶21 (Ohio Ct. App. 2009) ("actual damages are an essential element of a breach of contract claim" and judgment is properly granted by the trial court if a party fails to establish any damages).

9.    Testimony by Boston, Kralj, Frantonius, Ludwig, and Jahn was again very clear on this essential element:

- They are ***not aware*** of any business or customers lost or relationships with vendors that were negatively effected due to the actions of Defendants

- They are ***not aware*** of any actions taken by Defendants which were detrimental to Plaintiff's financial or business interests

- They are ***not aware*** of ***<u>any harm</u>*** caused by any actions of Defendants.

(Det. of Facts ¶26).  Plaintiff has failed to establish that any of the complained of actions of Defendants, which were not in breach of any of the Agreement obligations, has caused Plaintiff any damages.

10.    Because Plaintiff cannot establish two essential elements for its breach of contract claim – that Defendants failed to fulfill their contractual obligations, and that Plaintiff incurred damages as a result – Defendants respectfully request that the Court dismiss this claim against each Defendant.

### C. **Plaintiff Cannot Establish That Defendants Misappropriated Trade Secrets In Violation Of The Ohio Uniform Trade Secrets Act.**

11. Plaintiff seeks to establish that Defendants misappropriated trade secretes in violation of the Ohio Uniform Trade Secrets Act ("OUTSA"). Ohio defines a "trade secret" as:

> [I]nformation, including the whole or any portion or phrase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers that satisfies both of the following:
>
> (1) It derives *independent economic value*, actual or potential, from *not being generally known to, and not being readily ascertainable by proper means* by, other persons who can obtain economic value from its disclosure or use.
>
> (2) It is the subject of *efforts that are reasonable* under the circumstances *to maintain its secrecy*.

Ohio Rev. Code § 1333.61(D) (emphasis added).[4]  Here, Plaintiff has failed to identify any trade secrets that warrant protection because it has not identified any information that derives independent economic value from not being generally known to and not being readily ascertainable by proper means to others, and it has not identified reasonable efforts to maintain the secrecy of the information it

---

[4]      The Ohio Supreme Court has cited the following six factors to be considered when determining whether a trade secret exists: (1) extent to which the information is known outside the business; (2) extent to which it is known to those inside the business; (3) precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) savings effected and the value to the holder in having the information as against competitors; (5) amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information. State ex rel. The Plain Dealer v. Ohio Dept. of Ins., 80 Ohio Det. 3d 513, 524-25 (1997).

contends warrants protection.

12.    First, the conversion calculator that Salisbury sent to Earley is a piece of software that simply converts an English measuring unit to a metric unit, and it was downloaded off the internet (Det. of Facts ¶21).    Therefore, it has no independent economic value, is generally known to others, and is readily ascertainable.  As such, this does not constitute a trade secret.

13.    Second, the GR&R summary and IMT list are generated based on information from equipment purchased from an outside manufacturer which can be purchased by any competitor, are freely shared with outside auditors, and have even been shared on several occasions with an outside trade organization (*Id.* at ¶¶23-25).  To be considered a trade secret, the information must be "unique and competitively advantageous." Murray v. Bank One, 99 Ohio App. 3d 89, 97-98 (Ohio Ct. App. 1994) (noting something must be competitively advantageous as "[d]amages for a misappropriated trade secret are based upon either profits lost or profits gained). "If information is generally known in the industry, it is not a 'secret' and 'cannot qualify as a trade secret." Murray, 99 Ohio App. 3d at 99; R&R Plastics v. F.E. Myers Co., 92 Ohio App. 3d 789, 800-01 (Ohio Ct. App. 1993).    Likewise, if information is not readily known, but it is readily ascertainable, then whether something may qualify as a trade secret depends on "the amount of effort or money expended in obtaining and developing

information" as well as "the amount of time and expense it would take for others to acquire and duplicate the information." State ex rel. Plain Dealer, 80 Ohio Det. 3d at 524-25.  Plaintiff has failed to show that the GR&R summary or IMT list were unique, has failed to show that they were competitively advantageous (e.g. Plaintiff has not shown that ThyssenKrupp could obtain any benefit from this information or that it suffered any loss from disclosure of this information), has failed to show that the information contained in these documents was not readily known, and has failed to show that the information contained in these documents was not readily ascertainable. As such, this information does not constitute a trade secret.

14.     Furthermore, Plaintiff has not identified reasonable efforts to maintain the secrecy of the information it contends warrants protection. "There is no presumption that any particular idea imparted to or acquired by an employee is a trade secret unless the possessor takes active steps to maintain the secrecy." Water Mgmt., Inc. v. Stayanchi, 15 Ohio Det. 3d 83, 85-86 (1984).  Plaintiff did not designate any of the documents at issue as confidential (Det. of Facts ¶23). Although Plaintiff had Defendants sign Agreements at the start of their employment, there is no evidence that Plaintiff ever required employees to review or renew their confidentiality commitments, and there is no evidence that confidentiality obligations were ever discussed or enforced.  Notably, Boston, who was Earley and Ashby's direct supervisor, was not familiar at all with these types

of Agreements and was not sure if he had ever signed such an Agreement, but noted if he had, it would have been back in 1980, over 30 years ago (Det. of Facts ¶7). The Plant Manager, Ludwig, did not know if any of the other approximately 500 additional individuals that work at Rockport Works have entered into any confidentiality agreements with Plaintiff, and they have access to all areas of Rockport Works (*Id.*).

15. When Earley and Ashby had their exit interviews, during which they specifically disclosed they were going to work for ThyssenKrupp, Jahn did not discuss with them any obligations to not disclose information they learned during their employ with Plaintiff to ThyssenKrupp, did not request that they return any documents in their possession to ThyssenKrupp, did not show them copies of their Agreements, and did not discuss with them the existence of the Agreements or any obligations under the Agreements (Det. of Facts ¶¶10, 12, and 14). No one from Plaintiff even conducted an exit interview with Salisbury, so no discussions were had with him regarding confidentiality obligations (*Id.* at ¶13).

16. Furthermore, in anticipation of and in course of this litigation, Plaintiff has not taken steps to protect information which it may contend is confidential. Notably, the IT Department was not requested to search for any documents besides emails and attachments relating to Defendants, the IT Department did not perform any analysis on any of Defendants' computers, and the

IT Department was never asked to conduct an analysis of anything hardware related on any of Defendants' computers (*Id.* at ¶15). If Plaintiff is truly concerned that trade secrets have been lost, it has not engaged in reasonable efforts to determine information that may have been lost or to protect that information.

17.     Finally, to the extent Plaintiff would argue that emails Earley sent to his personal email address while he was still employed with Plaintiff constituted trade secrets, of which there is no evidence, Plaintiff cannot establish that Earley engaged in misappropriation. Misappropriation is defined as:

> (1)     acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

> (2)     disclosure or use of a trade secret of another without express or implied consent of the other person by a person who did any of the following:

> > (a) used improper means to acquire knowledge of the trade secret;

> > (b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived from or through a person who had utilized improper means to acquire it, was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

> > (c) before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

Ohio Rev. Code §1333.61(A). "Improper means" is defined to include "theft,

bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." Ohio Rev. Code §1333.61(A).

18.    Earley acquired these documents while he was still an employee for a proper purpose, and there is no evidence that he retained any of the information in those documents after his employment with Plaintiff ended (Det. of Facts ¶19). There is also no evidence that Earley has either disclosed or used any of the information in those documents to benefit himself or ThyssenKrupp, or that such information would even be of any benefit to his new line of work with ThyssenKrupp (*Id.*).    Therefore, Plaintiff cannot establish that Earley misappropriated any trade secrets.

19.    Because Plaintiff cannot establish that any information at issue in this case derives independent economic value from not being generally known to and not being readily ascertainable by proper means to others, cannot establish it made reasonable efforts to maintain the secrecy of the information it contends warrants protection, and cannot establish that such information was otherwise misappropriated, Defendants respectfully request that the Court dismiss this claim.

D.    **Plaintiff Cannot Establish That Defendants Breached Any Duties Of Loyalty.**

20.    Ohio courts have concluded that an employee "owes his or her employer a duty to act 'in the utmost good faith and loyalty toward his . . .

employer.'" <u>Fitness Experience, Inc. v. TFC Fitness Equip., Inc.</u>, 355 F. Supp. 2d 877, 892 (N.D. Ohio 2004) (internal quotations omitted). Courts note, however, that "preparing to compete" is "qualitatively different than actually competing with one's present employer and will not, by itself, support a breach of loyalty claim." <u>Id.</u>

21.    There is no evidence that Defendants breached any duty of loyalty. Namely, there is no evidence that any of Defendants were working for ThyssenKrupp while they were still employed with Plaintiff, and there is no evidence that any of Defendants were competing in any way with Plaintiff while they were still employed.

22.    The only basis for Plaintiff's claim is that Defendants' "acted in violation of their duty of loyalty to AK Steel by misappropriating and improperly utilizing AK Steel's Confidential Information and Trade Secrets for the benefit of themselves and ThyssenKrupp." (Complaint ¶56). As thoroughly discussed above, there is no evidence that Defendants misappropriated or improperly utilized Plaintiff's confidential and trade secrets information. Plaintiff's own employees who were responsible for supervising Defendants' work, and who would have known the nature of any confidential information that Defendants' dealt with, testified:

- They were ***not aware*** of Defendants revealing, using, or disclosing any information without authorization that Plaintiff considered to be

confidential, and were *not aware* of Defendants breaching any confidentiality obligations under their Agreements.

- They are *not aware* of any actions taken by Defendants which were detrimental to Plaintiff's financial or business interests.

(Det. of Facts ¶26).

23.     Because Plaintiff cannot establish that Defendants competed with Plaintiff while working for Plaintiff, misappropriated or improperly utilized Plaintiff's confidential information and trade secrets, or otherwise failed to act with good faith and loyalty during their employ with Plaintiff, Defendants respectfully request that the Court dismiss this claim.

**E.     Plaintiff Cannot Establish That Defendants Breached Any Common Law Duties Of Non Disclosure.**

24.     Plaintiff contends that Defendants breached their common law duties to not disclose confidential and proprietary information of Plaintiff (Complaint ¶61). To the extent Plaintiff is seeking to assert common law claims of misuse and misappropriation of trade secrets, Ohio Rev. Code §1333.67 specifically preempts such common law claims Glasstech, Inc. v. TGL Tempering Sys., Inc., 50 F. Supp. 2d 722, 730 (N.D. Ohio 1999). "The preemption section of the [statute] has been interpreted to bar claims which are based entirely on factual allegations of misappropriation of trade secrets." *Id.*

25.     Furthermore, this claim is entirely duplicative of prior claims and fails for the same reasons. Specifically, Plaintiff's breach of the duty of loyalty, a

common law claim, was also based on a common law duty to not disclose confidential and proprietary information of Plaintiff. And, Plaintiff's breach of contract and misappropriation of trade secrets claims were based on contractual and statutory obligations to not disclose confidential information. Therefore, for the reasons set forth above, Defendants respectfully request that the Court also dismiss this claim.

## V.     **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court grant their Motion for Summary Judgment and dismiss Plaintiff's claims against them with prejudice and in their entirety.

June 1, 2011                           Respectfully submitted,

*/s/ Thomas M.L. Metzger*

Thomas M.L. Metzger  (admitted Pro Hac Vice)
Natalie M. McLaughlin (admitted Pro Hac Vice)
Littler Mendelson, P.C.
21 East State Street, Suite 1600
Columbus, OH  43215
Telephone: 614.463.4201
Facsimile:  614.221.3301
Email:      tmetzger@littler.com;
            nmclaughlin@littler.com

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of June, 2011, I electronically filed the foregoing *Proposed Determinations of Undisputed Facts and Conclusions of Law in Support of Defendants' Motion for Summary Judgment* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

> Justin D. Flamm, Esq.
> Ryan M. Martin, Esq.
> Taft Stettinius & Hollister LLP
> 425 Walnut Street, Suite 1800
> Cincinnati, Ohio 45202
> *Attorneys for Plaintiff*

> */s/ Thomas M.L. Metzger*
> An Attorney for Defendants

Firmwide:101635364.1 059136.1037