**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **AK STEEL CORPORATION,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 1:10-00415-KD-C** |
| | ) | |
| **DONALD EARLEY, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. 29), specifically the portion of that motion addressing those of Plaintiff's claims that survived the Court's August 19, 2011 order on summary judgment (Doc. 43).  In its August 19 order, the Court withheld decision on Defendants' motion as to Count 4 of Plaintiff's Complaint (breach of common law duty of nondisclosure) and partially denied the motion as to Count 1 (breach of contract), pending additional briefing by the parties regarding 1) the appropriateness of injunctive relief as a remedy for alleged breaches of Defendants' employment contracts; 2) the existence of an actionable duty of nondisclosure under Ohio common law; 3) whether subject matter jurisdiction lies with this Court.  Upon consideration of the parties' supplemental briefs (Docs. 46 & 47), the Court has determined that it does have subject matter jurisdiction and that Defendants' motion for summary judgment is due to be **GRANTED** as to Counts 1 and 4.[1]

---

[1]   Reconsideration of the Court's decision to deny summary judgment to Defendants Donald Earley ("Earley") and Dona Ashby ("Ashby") as to Count 1 is sua sponte, based on the Court's determination that it should have also carried to trial the portion of Defendants' motion that sought summary judgment on AK's breach-of-contract claims.  Reserving decision would have

The Court adopts and incorporates by reference its prior findings of fact and conclusions of law set forth in the August 19, 2011 order.

## I.   Subject-Matter Jurisdiction

AK's confessed inability to prove economic damages caused by Defendants' alleged contractual breaches prompted the Court to order the parties to brief the issue of subject matter jurisdiction (specifically the question of whether the amount-in-controversy requirement of 28 U.S.C. § 1332(a) has been met in this case). In response, AK has argued that "the moment of removal" was the "appropriate time" for the Court to explore whether the amount-in-controversy requirement had been satisfied. (Doc. 47 at 2). AK also has noted that the issue of subject matter jurisdiction was, in fact, addressed when Defendants removed this case to federal court and that, at that time, Defendants asserted — and established to the satisfaction of a federal judge in Cincinnati — that the amount in controversy exceeded the statutory minimum. (Id.) But Defendants have since adopted a new position. Defendants now state that the amount in controversy does not exceed $75,000 (as it must for this Court to competently hear and decide this case), but they expressly do not challenge the Court's jurisdiction or seek dismissal on the basis that jurisdiction is lacking. (Doc. 46 at 2 & 13).

If a jurisdictional defect exists, the fact that Defendants have refrained from seeking dismissal would not matter. "[I]t is well established that subject matter jurisdiction cannot be waived or conferred on a court by consent of the parties." Eagerton v. Valuations, Inc., 698 F.2d 1115, 1118 (11th Cir. 1983). "A federal court not only has the power but also the obligation at any time to inquire into jurisdiction whenever the possibility that jurisdiction does not exist

---

allowed the Court to consider the dispositive question of whether, having failed to offer any evidence of economic damages, AK is entitled to injunctive relief. As explained in greater detail below, the Court answers that question in the negative.

arises." <u>Fitzgerald v. Seaboard Sys. R.R.</u>, 760 F.2d 1249, 1251 (11th Cir. 1985); <u>see also</u> Fed. R. Civ. P. 12(h)(3).

The Court is satisfied that it has subject matter jurisdiction over this case.  At the time federal jurisdiction was first invoked (when Defendants removed this case to federal court in the Southern District of Ohio), it appeared by a preponderance of the evidence that AK was seeking to relief valued at more than $75,000 from Defendants. "If a plaintiff makes 'an unspecified demand for damages in state court, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the . . . jurisdictional requirement.'" <u>Roe v. Michelin N. Am., Inc.</u>,  613 F.3d 1058, 1061 (11th Cir. 2010) (quoting <u>Tapscott v. MS Dealer Serv. Corp.</u>, 77 F.3d 1353, 1357 (11th Cir. 1996), <u>abrogated on other grounds by</u> <u>Cohen v. Office Depot, Inc.</u>, 204 F.3d 1069 (11th Cir. 2000)).  Only after AK failed to put forth any evidence of monetary damages and this Court determined that AK could not prevail on at least two of its claims did it become clear that any award to AK would fall short of the jurisdictional threshold.  But that realization did not divest the Court of it authority to manage and decide this case; as the Supreme Court instructed long ago, "events occurring subsequent to removal which reduce the amount recoverable . . . do not oust the district court's jurisdiction once it has attached." <u>St. Paul Mercury Indem. Co. v. Red Cab Co.</u>, 303 U.S. 283, 293 (1938). Accordingly, the Court may rule on the remaining issues.

## II.    Count 1 (Breach of Contract)

The Court's summary judgment decision foreclosed all but two avenues to AK's success on its breach of contract claims.  Specifically, the Court held that, to establish that Earley violated the terms of his Employee Agreement, AK would have to prove Earley's unauthorized use of confidential vendor contact information.  (Doc. 43 at 17).  To establish a breach by Ashby,

AK would have to prove that Ashby disclosed without authority AK's Inspection, Measuring & Test Equipment list ("IMT") or its Gage Repeatability and Reproducibility History ("GRRH"), both of which the Court found were of a secret or confidential nature.  (Id. at 17-18).  However, to prevail on Count 1, AK would not only have to prove a breach of either Earley or Ashby's Employee Agreement; it would also have to show that it is entitled to relief.  As the Court explained in its previous order, because AK has failed to provide evidence of economic damages resulting from Earley and Ashby's alleged contractual breaches, Count 1 of its Complaint can survive summary judgment only if AK can show that it has a viable claim to injunctive relief. (Doc. 43 at 12-13).  This it cannot do.

To determine whether to grant a permanent injunction, the Court looks to Ohio law.  See Hanger Prosthetics & Orthotics, Inc. v. Morgan, No. 1:00-cv-00170-CB-S, 2000 WL 1843820, at *1 (S.D. Ala. Oct. 17, 2000) ("In a diversity case, whether to grant a permanent injunction is governed by state law.").  Under Ohio law, to be entitled to the permanent injunction that it seeks, AK must establish by clear and convincing evidence: (1) that it has prevailed on the merits; (2) that it will suffer irreparable injury if the injunction is not granted; (3) that no third parties will be unjustifiably harmed if the injunction is granted; and (4) that the public interest will be served by the injunction.  Miller ex rel. Trumbull Indus., Inc. v. Miller, No. 2004-T-0150, 2005 WL 2372835, at *2 (Ohio Ct. App. Sept. 23, 2005) (citing Procter & Gamble Co. v. Stoneham, 747 N.E.2d 268 (Ohio Ct. App. 2000)).[2]  Though none of these factors alone is dispositive, see id., AK has failed to make a sufficient showing as to any of them.

---

[2]   In briefing the permanent injunction standard, AK relied on federal authority rather than Ohio precedents.  But the federal and Ohio standards are similar.  See Angel Flight of Ga., Inc. v. Angel Flight Am., Inc., 522 F.3d 1200, 1208 (11th Cir. 2008) ("Under traditional equitable principles, a plaintiff seeking a permanent injunction must demonstrate (1) it has suffered an

*AK has not prevailed on the merits*

AK argues that it has satisfied the first prong of the permanent injunction standard because "[t]he facts establishing the violations of the contractual and common law obligations of Earley and Ashby have been recognized in the summary judgment order."  (Doc. 47 at 7.)  But in its August 19 summary judgment order, the Court did not make a finding as to whether the vendor contact information that Earley emailed to himself before resigning from AK was of a confidential nature.  See Doc. 43 at 14 (noting that a genuine dispute exists as to whether the contact list was confidential and/or belonged to AK and acknowledging that, in the modern Internet age, courts have questioned the protectability of contract information).  And contrary to AK's suggestion (at Doc. 47 at 5), the Court did not find that Earley used any of the information he took.  The Court simply commented that such use could be inferred from the undisputed fact that, while employed by AK, Earley sent himself contact information for certain vendors that he contacted while later employed by ThyssenKrupp.  The emailed information may or may not have been used to facilitate Earley's contact with the vendors.  In evaluating whether Defendants were entitled to summary judgment, the Court drew all justifiable inferences in AK's favor, see Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-99 (11th Cir. 1992), but a mere observation that an inference may be drawn should not be conflated with a judicial finding of fact as to the merits of the case.

Also, a suggestion that AK has succeeded on the merits is difficult to square with the fact that summary judgment was granted in favor of all Defendants on two of AK's four causes of

---

irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.").

action and in favor of Defendant Salisbury on the contract claim.  And as discussed below in Part III, infra, summary judgment is now due to be granted to all Defendants on AK's remaining common law claim.  Finally, the part of AK's contract claim that outlasted the Court's first summary judgment order is due to be dismissed for AK's failure to provide either evidence of damages or, as discussed immediately below, evidence of a substantial threat that AK will be irreparably harmed unless it obtains the injunctive relief it seeks.

*AK will not suffer irreparable injury if an injunction is refused*

AK bears the burden of proving by clear and convincing evidence that there is a reasonable probability that it will suffer irreparable harm unless a permanent injunction issues. Restivo v. Fifth Third Bank of Nw. Ohio, N.A., 681 N.E.2d 484, 486 (Ohio Ct. App. 1996).  As the Ohio Court of Appeals noted in Miller v. West Carrollton, 632 N.E.2d 582, 586 (Ohio Ct. App. 1993), injunctive relief is not warranted "where the anticipated injury is doubtful or speculative; reasonable probability of irreparable injury must be shown."  Because "the purpose of an injunction is to prevent a future injury, not to redress past wrongs," Lemley v. Stevenson, 661 N.E.2d 237, 244 (Ohio Ct. App. 1995), the Court must assess the likelihood that Earley or Ashby will cause AK to suffer a material injury sometime in the future.

AK has not presented sufficient evidence to show that future injury is probable.  Without a sufficient factual basis, AK asserts that it "will be irreparably harmed if Earley and Ashby are at liberty to continuing using and compromising AK Steel's confidential information as they continue their employment with ThyssenKrupp."  (Doc. 47 at 7).   But nothing in the record indicates that, more than two years after the events that gave rise to this litigation, either Earley or Ashby still has or intends to use the vendor contact information, IMT, or GRRH.  Indeed, Earley has testified that the vendor contact information was "[t]hrown away."  (Doc. 32-3 at 7).

AK has not come forward with any evidence to the contrary.  And even if Defendants still have the IMT or GRRH, it is far from clear that either could be used now to injure AK.[3]

But AK would not be without recourse should it be injured by some further, unlikely use or disclosure of confidential information by Earley or Ashby.  The terms of Earley and Ashby's Employee Agreements leave open the possibility of a suit for damages, and those Employee Agreements remain enforceable.  See Sash & Storm, Inc. v. Thompson, No. 1-98-47, 1998 WL 852619, at *4 (Ohio Ct. App. Dec. 11, 1998) ("[M]erely because the party seeking to enforce the covenant has not met the high burden necessary for an injunction to issue does not mean that the covenant is unenforceable. . . . However, any further action for its enforcement must be for money damages rather than injunction.").   To prevail in such a suit, AK would have to do what it could not do here (i.e., prove that Defendants' conduct caused an economic loss), but the sheer availability of a legal remedy precludes injunctive relief.  Garono v. State, 524 N.E.2d 496, 498 (Ohio 1988) ("An injunction is an extraordinary remedy in equity where there is no adequate remedy available at law.").

---

[3]   Of course, Earley and Ashby's attorneys have the IMT and GRRH, as both documents were exchanged in discovery, introduced by AK as exhibits at Ashby's deposition, and filed on the Court's CM/ECF system.  (Doc. 30-8 at 22-28).  As a result, those documents have been publicly available for several months to anyone with a PACER password.  Nonetheless, AK has not taken any steps to protect itself from dissemination of the information contained therein.  The parties' June 2010 Rule 26(f) report suggested that a protective order would be submitted to the district judge originally assigned to this case (Doc. 4), but such an order was never filed.  In August 2010, after the case was transferred to this Court, Magistrate Judge Cassady ordered that any motion for a protective order be brought in a timely manner, but, again, such a motion was never filed.  (Doc. 23).  Even after the IMT and GRRH were publicly filed via CM/ECF in June 2011, AK did not act.  AK's idleness in this regard suggests an awareness that, regardless of what value they may have had to a competitor in 2009, the IMT and GRRH are of little worth today and that their disclosure is unlikely to injure AK — irreparably or otherwise.

*An injunction would harm third parties and disserve the public*

Though the Court finds that AK's lack of success on the merits and its failure to establish by clear and convincing evidence a reasonable probability of irreparable harm are collectively sufficient to preclude the issuance of a permanent injunction, consideration of the last two Ohio factors further demonstrates the inappropriateness of injunctive relief in this case.

AK has prayed for a permanent injunction that would require onerous and continuous supervision by the Court.  Not only would AK's proposed injunction task the Court with enforcing the terms of Earley and Ashby's Employee Agreements (which, as noted above, are adequately enforceable at law),  it would also restrain and enjoin Defendants from "engaging in any act in violation of . . . the laws of Ohio."  (Doc. 1-1 at 12).  Putting aside the issues associated with ordering two citizens and residents of Alabama to abide by the laws of a state nearly 700 miles away in which neither has lived for at least 10 years and in which neither owns any property (Docs. 6-1 & 6-2), Ohio courts have recognized that injunctive relief "will be refused . . . where its enforcement would necessitate close and continuous supervision by the court for an indefinite period."  See, e.g., Miller, 632 N.E.2d at 586.  This is such a case.

Additionally, AK seeks an order compelling Earley and Ashby to discontinue their employment with ThyssenKrupp.  (Doc. 1-1 at 12; Doc. 47 at 6).  There is no basis for this Court to force Earley and Ashby to quit their jobs.  Earley and Ashby were never bound by an agreement not to compete with AK, and, as stated most clearly in a case cited by AK, "[t]he general rule of law is that in the absence of a contract not to compete, an employee may compete against his former employer."  Lee Turzillo Contracting Co. v. Anderson, No. 37940, 1978 WL 218258, at *2 (Ohio Ct. App. July 13, 1978) (citing Curry v. Marquart, 11 N.E.2d 868 (Ohio 1937)).  Both Defendants truthfully disclosed to AK their intentions to work for ThyssenKrupp

without receiving any objection from AK in return, and they subsequently relocated to Alabama from Indiana in order to accept work at ThyssenKrupp, where they have been employed for approximately two years.  Whereas the public policy of Ohio will not countenance a restraint on competition unbounded by reasonable geographical and temporal constraints, see Lake Land Emp't Group of Akron, LLC v. Columber, 804 N.E.2d 27, 30 (Ohio 2004), the Court finds that granting the injunction sought by AK would disserve the public interest.

Defendants' motion for summary judgment will be **GRANTED** as to Count 1 of AK's Complaint.

### III.    Count 4 (Breach of Common Law Duty of Nondisclosure)

Because the parties' summary judgment papers did not cite and the Court was unable to find an Ohio case outlining the elements of a cause of action for breach of the common law duty of nondisclosure (which AK alleges against all Defendants in Count 4 of its Complaint), the Court ordered the parties to brief the issue of whether an actionable duty of nondisclosure exists at common law.  (Doc. 43 at 22-23).   In response, AK claims that a common law duty of nondisclosure is derived from certain agency principles, namely the principle that an agent is duty-bound not to disclose confidential matters.  (Doc. 47 at 10-11).  Defendants argue that the Ohio Uniform Trade Secrets Act preempts all claims based solely on allegations of misappropriation of confidential information, even where such information does not rise to the level of a trade secret (Doc. 46 at 5-7).  However, neither AK nor Defendants cites a single Ohio case in which a party successfully prosecuted or defended against a claim for breach of the common law duty of nondisclosure.  And neither party cites a case articulating the elements of any such of a cause of action.

But in order to rule on Defendants' motion, the Court need not decide the apparently novel questions of whether a duty of nondisclosure exists at common law and under what circumstances a plaintiff may be entitled to relief in the event of a breach.  As noted by the Ohio Court of Appeals in a case upon which AK relies heavily, parties can "supplant, by contract, the common-law rules governing their relationship."  <u>Costanzo v. Nationwide Mut. Ins. Co.</u>, 832 N.E.2d 71, 77 (Ohio Ct. App. 2005).  Here, Defendants' respective Employee Agreements expressed the contours of Defendants' relationships with AK. They also specifically addressed the extent of the Defendants' contractual duties not to disclose confidential information.  Just as Defendants were entitled to summary judgment on AK's breach of contract claim, summary judgment is due to be **GRANTED** as to AK's coterminous common law claim.

## IV.    Conclusion

In accordance with the foregoing, Defendants Earley and Ashby's motions for summary judgment (Doc. 29) are **GRANTED** as to **Count 1**.  Defendants' motion for summary judgment (Doc. 29) is **GRANTED** as to **Count 4**.

Judgment shall be entered by separate document as provided in Rule 58 of the Federal Rules of Civil Procedure.

**DONE** and **ORDERED** this the **16**[th] day of **September 2011**.

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**